Carl **HALFERTY** and J. B. Halferty, d/b/a Halferty Brothers, Appellants,

v.

**NATIONAL MUTUAL CASUALTY COMPANY, a Corporation, Respondent.**

No. 22449.

Kansas City Court of Appeals.

Missouri.

Nov. 5, 1956.

---

Robert S. Burns, Burns & Dicus, Kansas City, for appellants.

Dean C. Allard, Robert L. Jackson, Kansas City, for respondent.

DEW, Presiding Judge.

Appellants, hereinafter called the plaintiffs, brought this action to recover $1,800, with interest, claimed by them to be due under a certain automobile insurance policy issued by the defendant, the respondent. They also seek damages in the sum of $180 for vexatious refusal to pay, and $1,000 attorneys' fees. On defendant's motion the trial court dismissed the petition with prejudice and at the cost of plaintiffs. Plaintiffs have appealed.

Plaintiffs' second amended petition alleges that at all times mentioned they were and are partners in a trucking business with offices at Plattsburg, Missouri; that the defendant is an insurance corporation of the State of Oklahoma; that on January 15, 1947, defendant issued to J. L. Halferty its certain automobile policy No. CA 63004, wherein it insured him to a maximum limit of $10,000 for liability because of bodily injury to any person, growing out of the ownership, maintenance and use of a certain 1940 Ford pickup truck owned by him, and likewise so insured any person or persons using such truck with his permission; that while the policy was in force and while plaintiffs were using said pickup truck with the consent of the named insured J. L. Hal-

ferty, their father, there was a collision between an automobile driven by one E. T. Phillips and another truck owned by plaintiffs, and in the collision Maude Walker, a passenger in the Phillips car, received severe injuries, and thereafter brought suit in the Circuit Court of Clinton County, Missouri against these plaintiffs and said E. T. Phillips, charging these plaintiffs with negligence in the operation of said pickup truck, in parking the same with blinding headlights thereon in such fashion as to blind the oncoming driver; that such issue was submitted to the jury, and the case resulted in a verdict and judgment against all the defendants therein for $7,500.

The petition alleges further that defendant herein was notified of the accident to Maude Walker, had knowledge thereof and investigated the same, received a copy of her petition and knew that the defendants therein had been served with process, and later filed an answer for J. L. Halferty in said action, but failed and refused to enter into the defense of the plaintiffs herein in said cause, although plaintiffs had done everything required of them by said policy.

The petition further stated that on April 1, 1949, the judgment in said Walker suit was settled and released of record upon the payment of $7,250 and costs; that E. T. Phillips paid $2,750 of the same and plaintiffs then paid the balance of $4,500; that under an "other insurance" clause of the automobile policy issued by the defendant to J. L. Halferty on the pickup truck, defendant is obliged to the plaintiffs in the amount of $1,800 to reimburse them for said expenditure of that amount, as required by the policy; that defendant's refusal to defend plaintiffs or to indemnify them for such loss was vexatious, without reasonable cause, and arbitrary, and therefore it is liable to the plaintiffs for 10 percent damages in the sum of $180 for vexatious refusal to pay, and reasonable attorneys' fees in this action in the sum of $1,000.

An answer was filed by the defendant herein, and later withdrawn and a motion was then filed by it to dismiss the petition with prejudice on the following grounds:

"1. The petition fails to state facts sufficient to constitute a cause of action against this defendant.

"2. The plaintiffs herein are not the proper, necessary and real parties in interest in this action, in that they have not been damaged by any acts or conduct of this defendant in the particulars set forth in plaintiffs' amended petition.

"3. The plaintiffs have been fully paid for any and all losses or payments by them as the result of the occurrence set forth in plaintiffs' amended petition.

"4. The plaintiffs, on October 24, 1949, received full payment for any loss or damage incurred by them from the Hawkeye Casualty Company, of Des Moines, Iowa, and executed at said time a full, final and complete release and receipt for any sums that they might have accruing to them arising out of the occurrence set forth in plaintiffs' amended petition, retaining no legal or beneficial title or interest in and to any right or cause of action against this defendant arising out of the occurrence referred to.

"Wherefore, this defendant moves the court to dismiss the petition herein with prejudice to the plaintiffs and at the cost of the plaintiffs".

Reserving the right of trial by jury, the parties submitted the motion to the Court upon the following stipulation of facts "so that the Court may thereupon, on said motion to dismiss, decide the issues therein presented":

"Stipulation of Facts

"Come now the parties hereto by their attorneys and stipulate and agree as follows:

## "I.

"At all times herein mentioned, plaintiffs, as partners, resided at Plattsburg, Missouri, and were engaged in a trucking business hauling farm products and livestock. The defendant was a casualty insurance Company organized under the laws of Oklahoma and authorized to do business in Missouri.

## "II.

"After dark, on December 17, 1947, the plaintiffs were operating a tractor-trailer truck and a Ford 'pick-up' truck on the Liberty-Plattsburg Road, a public road running in a northeast-southwest direction in Clinton County, Missouri. The tractor-trailer truck was owned by the plaintiffs and the Ford 'pick-up' truck was owned by J. L. Halferty, the father of the plaintiffs. The tractor-trailer truck was insured under a commercial automobile policy issued to the plaintiffs on December 15, 1947, by the Hawkeye Casualty Company, and had bodily injury liability coverage of $15,000–$30,000, the terms of which are set forth in a form of the Hawkeye Casualty Company policy involved, attached hereto and marked as Exhibit 1. The Ford pick-up truck was insured by a policy issued by the defendant to J. L. Halferty on January 15, 1947, and had bodily injury liability coverage of $10,000–$35,000, a copy of which is hereto attached and marked as Exhibit 2. The Ford 'pick-up' truck was being used by the plaintiffs with the permission of the named insured under the policy issued by the defendant. The plaintiffs had stopped the tractor-trailer truck on the north side of the aforesaid road and the Ford 'pick-up' truck was parked on the south side of the road with its headlights on. An automobile driven by one E. T. Phillips, in which Maude Walker was a passenger, approached from the east and struck the tractor-trailer truck. The Ford 'pick-up' was not struck by either the Phillips' car or the tractor-trailer, and the plaintiffs at the time of the accident did not give any notice of the same to the defendant.

## "III.

"On March 23, 1948, Maude Walker, the passenger in the Phillips' car, filed a suit for personal injuries in the Circuit Court of Clinton County, this being cause #3136, styled Maude Walker vs. E. T. Phillips, Carl Halferty and J. B. Halferty, d/b/a Halferty Brothers, alleging various acts of negligence as to the defendants, among which was the allegation that the Halfertys were negligent 'in negligently parking or stopping a "pick-up" truck with blinding headlights thereon, on said highway in such a fashion as to interfere with the vision of drivers of oncoming vehicles.' Negligence as to the parking of the tractor-trailer truck was also alleged. A copy of this petition is herewith submitted as Exhibit 3. At the time this suit was filed, the plaintiffs did not forward the summons and petition to the defendant or demand a defense by defendant, and did not notify the defendant of the accident. The law firm of Sprinkle and Knowles, the attorneys for the Hawkeye Casualty, on April 3, 1948, filed a separate answer for the Halfertys.

## "IV.

"On July 13, 1948, Maude Walker amended her petition and added J. L. Halferty, the owner of the Ford 'pick-up', as a defendant, on the theory that he was engaged in a joint enterprise and common adventure with his sons, the plaintiffs in the action now before the court. The allegations of negligence were the same as in the original petition and it was this amended petition upon which the Maude Walker suit was tried.

"V.

"After J. L. Halferty received the summons and petition, he forwarded the same to defendant, The National Mutual Casualty Company, and on August 11, 1948, Robert Jackson, attorney for National Mutual, filed a separate answer to Maude Walker's first amended complaint for J. L. Halferty. A copy of the first amended petition and the separate answer of J. L. Halferty are submitted herewith as Exhibits 4 and 5..

"VI.

"On November 4, 1948, in the Circuit Court of Clinton County, the Maude Walker case proceeded to trial. After the jury had been chosen, Maude Walker dismissed as to J. L. Halferty, the named insured under defendant National Mutual's policy. Mr. Jackson appeared at the trial as attorney for J. L. Halferty, but after the dismissal as to J. L. Halferty, Mr. Jackson did not further participate in the trial. The cause continued to be tried and on November 5, 1948, the jury awarded Maude Walker a judgment against E. T. Phillips, Carl Halferty and J. B. Halferty in the amount of $7,500.00.

"VII.

"In Instruction #1 submitted to the jury by Maude Walker, the jury was required to find that a 'pick-up' was parked on the highway with its headlights burning and shining so that they would be blinding to E. T. Phillips and that such was negligence on the part of Carl and J. B. Halferty. The 'pick-up' referred to was that insured by defendant, National Mutual. The Clinton County Court record of the case, the findings of the jury, and the judgment are submitted herewith as exhibits 6, and all the instructions are submitted herewith as Exhibit 7.

"VIII.

"On November 15, 1948, Mr. G. E. Wright of the Hawkeye Casualty Company, on behalf of his company and Carl and J. B. Halferty, wrote the National Mutual reporting on the proceedings and result of the Maude Walker trial and demanding contribution from National Mutual on any payment made to Maude Walker and that National Mutual participate in the further defense of the case. He also reported that the usual motions and proceedings subsequent to judgment and preparatory to appeal had been taken. A copy of the letter is submitted herewith as exhibit 8.

"IX.

"After the trial the defendants E. T. Phillips, Carl Halferty and J. B. Halferty filed motions for new trial which were overruled on January 4, 1949. Then they filed notices of appeal to the Kansas City Court of Appeals and defendant Phillips filed an appeal bond of $10,000 and Carl and J. B. Halferty filed a $10,000 appeal bond.

"X.

"Subsequent to filing their appeal, the defendants negotiated a settlement with Maude Walker for $7,250.00. On April 1, 1949, E. T. Phillips paid $2,750.00 of this settlement through his insurance company, and Carl and J. B. Halferty personally paid $4,500.00 of this settlement by a check dated April 1, 1949, drawn on the First National Bank, Plattsburg, Missouri. A copy of this check is submitted as exhibit 9. This settlement was negotiated by Paul Sprinkle, attorney for Hawkeye Casualty, on behalf of Carl and J. B. Halferty and the defendant National Mutual did not participate in this negotiation.

"XI.

"On April 7, 1949, Carl and J. B. Halferty wrote defendant National Mutual telling it of the settlement and demanding reimbursement for the money advanced by them on the settlement. On April 11, 1949, the Halfertys again wrote defendant, National Mutual, of the settlement and demanded $1,800.00 of the $4,500.00 advanced by them. This demand was based on the 'other insurance' clauses of the National Mutual and the Hawkeye Casualty policies involved in the Maude Walker suit. It is agreed between the parties that if defendant National Mutual is liable to the plaintiffs at a future trial of the case on the issues, its share of contribution on the settlement could not ·exceed $1,800.00. Copies of these letters are attached hereto as exhibits *10 and 11*.

"XII.

"On April 8, 1949, defendant National Mutual wrote the Halfertys denying responsibility on their policy. A copy of this letter is submitted as exhibit *12.*

"XIII.

"Thereafter, Carl and J. B. Halferty worked out an agreement with the Hawkeye Casualty Company by which the Hawkeye paid them on September 2, 1949, the $4,500.00 with interest. A copy of the agreement and copy of draft of Hawkeye Casualty Company are hereto attached and marked exhibits *13 and 14.*

"XIV.

"Subsequently, on November 28, 1949, the plaintiffs herein instituted this suit naming the National Mutual Casualty Company and Hawkeye Casualty Company as defendants. Timely answers were filed by both defendants. Thereafter plaintiffs filed an amended petition and dismissed their action against Hawkeye Casualty Company. Plaintiffs have subsequently filed a second amended petition and defendant has filed motion to dismiss. It is on the issues under the second amended petition and the motion to dismiss that the cause is submitted to the court.

> "Carl Halferty and James B. Halferty, d/b/a Halferty Brothers,
> "By Robert S. Burns (Signed)
> _____
> "Their Attorney

"National Mutual Casualty Company, a corporation
"By Robert L. Jackson (Signed)
_____
"Its Attorney."

The coverage liability provision in defendant's policy insuring against bodily injuries referred to in the stipulation of facts, was as follows: "The National Mutual Casualty Company * * * does hereby agree with the insured named * * * subject to the limits of liability, exclusions, conditions and other terms of this policy 1. Coverage A.—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * because of bodily injury * * * sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Exhibit 13, attached and referred to in the stipulation of facts, was an agreement signed by the appellants and by the Hawkeye Casualty Company, whose policy covered their trailer truck, and recites the proceedings leading to the judgment of $7,500 against the plaintiffs and E. T. Phillips in the suit brought by Maude Walker, the payment by the plaintiffs of $4,500 as their part of the settlement and satisfaction of the judgment, with interest, totaling $4,623.75, refers to the controversy between the plaintiffs and the Hawkeye Casualty Company regarding the reimbursement **to**

the plaintiffs of such outlay on their part, and the fact that the plaintiffs were also demanding payment of said sum from the National Mutual Casualty Company of Tulsa, Oklahoma, on a policy issued by it on one of the other vehicles involved, and "are taking proceedings to collect from said company by reason of said policy of insurance." The agreement concludes as follows: "So therefore, the said Hawkeye Casualty Company hereby loans to Carl Halferty and J. B. Halferty the sum of $4,623.75 as of September 21, 1949, it being understood that there is no obligation whatsoever upon the said Carl Halferty and J. B. Halferty to repay said sum to the said Hawkeye Casualty Company except and in the event of receiving payment or making collection from the said National Mutual Casualty Company."

The "other insurance" clause in both policies referred to in the pleadings and stipulation reads as follows:

"Coverages. A. * * * If the named insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss * * *".

The point of error presented by the plaintiffs is that the Court erred in granting the defendant's motion to dismiss, inasmuch as the petition did state a cause of action against the defendant; that the plaintiffs are proper, necessary and real parties in interest in the action, and that the agreement between the plaintiffs and the Hawkeye Casualty Campany was not a full and complete release, the plaintiffs having retained legal and beneficial title and interest in this action. The defendant contends that the Court properly dismissed the petition because it fails to state and the stipulation of facts does not disclose that the plaintiffs became "obligated to pay by reason of the liability imposed by law," as provided in the policy.

We turn our attention first to the question whether the plaintiffs are the real parties in interest in this action. Section 507.010 RSMo.1949, V.A.M.S. requires that "Every action shall be prosecuted in the name of the real party in interest".

■ Plaintiffs were entitled to but one satisfaction of their loss. Swift & Co. v. Wabash R. Co., 149 Mo.App. 526, 131 S.W. 124. As a result of their negotiations with the Hawkeye Casualty Company that company paid to plaintiffs the full. amount of their claim, $4,623.75, inclusive of interest, but in so doing contended that under the "other insurance" clause of its policy and of the policy written by defendant on the other truck, $1,800 of the judgment so settled should be assumed and paid by defendant, which both the plaintiffs and the Hawkeye Casualty Company had demanded of the defendant, without avail. Under the agreement to pay the plaintiffs, the Hawkeye Casualty Company agreed that plaintiffs would not be under any obligation to repay the $4,623.75 for· which the plaintiffs had "taken proceedings" to collect from defendant, unless the plaintiffs did collect it from the defendant. If these facts show an unconditional payment of plaintiffs' claim for indemnity for their loss growing out of the Walker suit, leaving in them no further interest, legal or equitable in such claim, then they cannot pursue their claim against the defendant here, as they would not be the real parties in interest in this action brought for that purpose.

It was said in Queen Insurance Co. of America v. Meyer Milling Co., 8 Cir., 43 F.2d 885, 888, where the risks under the policies were assumed to be identical: "Assume, for example, that two insurance companies, X and Y, have each insured against fire A's house and that he has sustained a fire loss amounting to $10,000. X pays the full amount. Y pays nothing. A, having been fully indemnified, has no

claim against Y and cannot maintain a suit against Y". It will be noted that the Court used the words "pays the full amount", presumably meaning an unconditional payment. In that case the insured, upon receiving the full amount of its claim from one of the insurance companies involved, including the amount in excess of that for which another insurer admitted liability, gave its promissory note to the first insurer or its agent for the same amount received, payable one day after collection of the excess amount from the other company on its policy, if such collection be made. The Court held that the money paid to the maker of the note was not an absolute payment of his claim, but a conditional payment, to become absolute upon the happening of a future event, the failure of the insured to collect from the other insurer. The Court held that the insured was not fully paid nor indemnified so as to lose its interest in the claim. As a test, the Court said that if the first insurer had sued the second insurer for contribution, the former could not have shown, as required for recovery, that it had unconditionally paid the claim to the insured, who, under the circumstances, was either bound or might be bound to repay.

In Adler v. Bush Terminal Co., 161 Misc. 509, 291 N.Y.S. 435, the insured had personal property in storage in a warehouse. It was destroyed by fire. He sued the warehouse for the loss. One defense was that after the storage plaintiff obtained fire insurance to cover such a loss; that plaintiff had made a claim for same under the policy since the fire; that plaintiff had received payment from the insurer to cover the loss and had thereby discharged the claim. There was evidence that the money paid by the insurer was designated as a "loan", pursuant to the contract with the insured, providing that in case of fire for which a carrier or bailee was liable, the insurer would advance to the insured, a loan in the amount of such loss, repayable to the extent of any recovery the insured

may make of such carrier or bailee, and the insured, upon request of the owner, would enter and prosecute suit against such carrier or bailee therefor, under the insurer's direction. Upon receipt of the money from the insurer, the insured gave a receipt, reciting, in substance, the conditions of the contract. It was held that the transaction was a loan and not a payment of the claim.

Speaking of the form of receipt given in the Adler case, the decision quotes, 291 N.Y.S. at page 441, from Lee v. Barrett, 82 Misc. 475, 144 N.Y.S. 941, as follows: " 'This form of receipt has been construed by numerous federal authorities as being in the form of a loan and advancement to be recovered back, and does not subrogate the insurance company in place of the person to whom said money had been advanced or loaned. *It cannot be construed as a payment for the loss*' ".

■ A person who has neither a legal or equitable title to a claim is not the real party in interest, but may be if he has either or both. 67 C.J.S., Parties, § 10, p. 912. In Keeley v. Indemnity Co. of America, 222 Mo.App. 439, 7 S.W.2d 434, 436, plaintiff brought suit on a fire insurance policy issued by the defendant on three automobile trucks and recovered judgment, plus penalties. The plaintiff had assigned in writing to the mortgagee of the trucks " * * * the proceeds as may ultimately be derived from any and all insurance policies, upon which collection has not yet been made," applicable to the trucks described, and which were destroyed by fire. The court said:

"Appellant strenuously insists that no case was made for the jury for the reason that the evidence clearly shows that plaintiff was not the real party in interest. We confess this question has given us pause, but after carefully considering section 1155, Revised Statutes Missouri 1919, and the cases cited in the briefs and such as our own investigation has led us to, we think it must

be held that plaintiff is the real party in interest.

"Now, in considering the assignment, we must have in mind that it is necessary only that plaintiff have the bare legal title to the cause of action. Even where the beneficial ownership of the cause of action has been assigned, the owner of the legal title to the cause of action yet remains the real party in interest; for the statute, supra, makes the person who has the legal title to the cause of action the real party in interest. Now this assignment conveys plaintiff's interest to the 'proceeds as may ultimately be derived from the policies.' Does he not then still retain the legal title to the cause of action? We think so. On the same day that this assignment was executed, plaintiff also gave a power of attorney to the Harvester Company, or its attorneys, Spencer & Donnell, to institute and prosecute and settle this claim against the insurance company. When these two papers are considered together, we think the intention is shown that plaintiff was retaining the legal title to the cause of action. That which was given the Harvester Company by the assignment—that is, the proceeds from the insurance policies—was not a legal interest in the proceeds, but an equitable interest therein, and while plaintiff need not have a beneficial interest in the cause of action so as to constitute him the real party in interest, yet he did retain a beneficial interest, for it must be borne in mind that his liability to the Harvester Company for the unpaid purchase price of the insured trucks caused him to have a beneficial interest in the suit on the policy.

"On the proposition that the holder of the legal title to the cause of action is the real party in interest, though he may not have any beneficial interest, see 30 Cyc. 78; Guerney v. Moore, 131 Mo. 650, 32 S.W. 1132; Hart-

mann v. Owens, 293 Mo. 508, 240 S.W. 113; Young v. Hudson, 99 Mo. 102, 12 S.W. 632.

"Under these authorities we think plaintiff had the legal title to the cause of action, and his agreement about the distribution of the proceeds does not change that. Whatever interest the Harvester Company had was equitable, for from the instrument itself it will be seen that plaintiff did not assign his cause of action against defendant, but merely assigned whatever proceeds may ultimately be derived from the policies. In effect, it was an agreement with the Harvester Company that if he (plaintiff) should recover any money on his suit against defendant, he would pay same over to the Harvester Company to cover his debt to it. The proceeds were a matter of the future and something that might never come into being. By the assignment and power of attorney, the intention clearly appears that plaintiff was to keep his cause of action, for he authorized an attorney to bring the suit for him, and by the assignment he sought to convey to the Harvester Company whatever he may get out of the lawsuit. The instruments were part of the same transaction and should be construed together."

■ Under the authorities and record before us we believe the plaintiffs were the real parties in interest in the instant case, retaining the legal title to their claim for indemnity to the extent of defendant's liability, if any.

■ Defendant makes the further contention that under the pleadings and the stipulation of facts there is no showing that plaintiffs complied with the requirements of the policy regarding a report of the accident, nor that plaintiffs forwarded their summons to the defendant, nor that they co-operated with the defendant's investigators. J. L. Halferty, the named in-

sured under defendant's policy, was, as stated, a party defendant in the case for a time, forwarded his summons to defendant herein whose counsel filed answer for him and represented him until his dismissal from the case. Under the circumstances defendant herein acquired actual knowledge of the accident and prior suit and, of course, had the opportunity and authority to investigate the liability of all the parties. Baker v. Fox, Mo.App., 70 S.W.2d 72, 78.

Defendant takes the position further that it is not liable for the plaintiffs' present claim or any part thereof because it is not shown that plaintiffs became "obligated to pay by reason of the liability imposed by law", as provided in the policy. The quoted words of the policy refer to damages for bodily injuries to third persons covered by the policy. Those damages were reduced to judgment against the plaintiffs herein and E. T. Phillips, and are shown to have been paid by them in full, which was their obligation imposed by law.

Lastly, the defendant urges that it is not bound by the settlement of the Walker case; that until a judgment has been appealed from and sustained or dismissed, no liability exists against it to a judgment creditor, without a written agreement to a settlement between the insured and a third party. We think the authorities relied on by defendant on this point are not applicable, where it had actual notice of the damage suit, participated in it for a time in behalf of one of the parties, declined to take any action in behalf of the plaintiffs herein, and where the liability of the insured has been reduced to judgment, of which the plaintiffs have paid the balance in full.

For the reasons stated, we further conclude that the petition stated and the stipulated facts disclose a cause of action in the plaintiffs. The pleadings and the stipulated facts are not, however, sufficient to justify any judgment for attorneys' fees or damages for vexatious delay. Keeley v. Indemnity Co. of America, supra, 7 S.W.2d at page 437. The motion to dismiss the petition should have been overruled.

The order of dismissal is set aside, the judgment is reversed and the cause remanded.

All concur.